Your Honor, this is a case of a pre-trial writ of habeas corpus that has been properly brought under Section 2241. The appellant, Joseph Montano, is being put into jeopardy for this crime. That's not in dispute. What's in dispute is whether or not this is allowable. Now the first case, the first trial resulted in mistrial. It was declared sui sponte. And the mistrial was declared after one of the state's hearings. Go ahead. Yes, Your Honor. No, go ahead. After one of the state's witnesses, Mr. Faraz, incriminated himself during cross-examination. The trial judge How did he incriminate himself? Well, this is a case of aggregate theft over a period of three years, which is the allegation. You don't have to tell me the details, but he incriminated himself by indicating He was the one that was signing the checks. He was the employer at the check-cashing place. And so when the checks from Memorial Hermann, which was a group party, were brought to the check-cashing place, they weren't signed. And so he was signing them. And this came out during cross-examination. It didn't come out during So I mean he was involved in the case, too deeply involved in the case to be a witness? Is that it? Well, perhaps that was the judge's ruling. But the judge did not say why he had declared a mistrial. Well, the judge did. The judge did say he was declaring a mistrial. If you look through the record on appeal, the state's brief, and the appellant's brief, it appears the judge sui sponte granted the mistrial because he was allowing Faraz to plead the fifth. And so, therefore, he was going to be denying Montano the opportunity to further cross-examine. He said what now? Why did he disallow further cross-examination? I missed this. He was going to allow, stop the trial once Faraz made these statements. He called in a public defender to advise him of his rights. Okay, to advise him. Okay, okay. I've got it now. I've got it. And then the public defender informed the court that he was going to plead the fifth. So, rather than continuing with cross-examination. Right on the spot, huh? Yeah. Okay. So, you know, public defender doing their job. However, Faraz had already voluntarily testified to these facts. He'd already voluntarily testified of this. So, he'd already incriminated himself. But all that's irrelevant to the issue before us. Well, you know, I think ultimately it is relevant because I think it's going to fall into the plein air doctrine. So, I think ultimately that does become relevant because as the state themselves cite in their decision to plead the fifth is what prompted the trial court to declare a mistrial. Now, I think it's well settled through that he cannot invoke the fifth amendment once he's voluntarily testified to facts that are incriminating. And so, he should not have been allowed to plead the fifth. Did you file a reply brief? Is there a reply brief? A reply brief? No. Okay. Well, the opposing counsel cites, I think in a footnote, this really great case for you, Fain v. Duff. Have you read that now? This case is a really good case for you, and I wanted to hear your explanation of it, but it doesn't sound like you're ready to talk about it. I've read a lot of cases getting ready, and I think I might have. Okay. Well, I have a related question to what you were discussing with Judge Jolly then. If you were to rule in your favor, if we were to rule in your favor, this is assuming arguendo, nobody's indicated they're going to rule in your favor. Why isn't the better remedy to remand to the district court to adjudicate the double jeopardy claim in the first instance? Well, I think as this court has said in Martinez v. Caldwell, this is a de novo issue. And I think also, you know, circuit courts can issue the writ, and I think there's enough in the record to satisfy it. And also . . . But there's an issue of consent involved. In other words, the government charged and the state courts found that you had consented to the mistrial. Yes, Your Honor. So, I mean, that would be an issue for the district. We couldn't rule on that, could we? Well, I think the issue of consent . . . again, this would be a . . . as this court said in United States v. Fisher, which Honorable Judge Elrod wrote the opinion, it's taken by a case-by-case basis. There's no bright-line determination. And so, the court is free to determine the entire . . . to determine from the circumstances in the entire record. But if the district court is enlightened to the fact that there is this possibility of getting relief now, they would be better suited to fleshing out all these facts and having another hearing on that. Well, I think if the district court were to hold a hearing, I don't think anything that's not already in the record is going to be brought out. I think what's going to be said is, the witness testified. In the middle of cross-examination, he pled the fifth. The judge stopped the trial and declared a mistrial. I think that . . . that's it. That's what's going to be said. I don't think there's going to . . . I mean, there's . . . I know the state isn't going to argue consent. But you didn't object to whoever . . . did not object to the trial . . . mistrial. Didn't say, no, Your Honor, we want to continue. This is good. That's . . . wouldn't that have been the normal reaction? When that's teed up . . . if you've ever been in the courtroom when somebody's taken the fifth and it's all exploding like that, you want to keep on going, don't you? I've been in a courtroom like that. Not a few clients guilty. Yes, I'm . . . yes, I think an objection would have . . . would have . . . I think an objection, an explicit objection would have helped. And I think the fact is, if those . . . Well, what if you had explicitly objected and he said, okay, I won't declare a mistrial and we'll proceed? You wouldn't have wanted that. You were glad to get the mistrial. No, I think this case was unraveling before the state's eyes in front of the jury. I think the fact is, if he had decided to not declare a mistrial, he was still going to deny a cross-examination of the witness after they had already admitted incriminating facts. I think the . . . and I think after . . . and, you know, I know that the state's going to decide that a lot of this is off the record, but when you read the record, the judge comes out, the first statement he makes is, I'm declaring a mistrial. I'm going to declare a mistrial. And I'm going to set this case back on the docket. Nobody moved for a mistrial. I mean, that's . . . again, I wasn't there. But it appears to be sui sponte? Yes, it is. I don't believe . . . Is it in front of the . . . is it in front of the jury at that point? No, the jury had been out, I believe. Okay. Again, it's something that's . . . You can't tell whether the jury's back in the room when the judge says, I'm declaring a mistrial? Or are you sure it's not in the room? I can't tell. I believe that they're not in the room, but I don't want to speak to that. So . . . but I think . . . Arguably . . . One of the favorite responses of attorneys in this Court often when we ask questions is, Your Honor, I didn't try this case. Now, that is no excuse in this case because we expect you to be as familiar with the record as if you had tried it. Yes, Your Honor. Okay. And I think that's one of the things is that the Southern District did not . . . did not call for briefs, did not hold a hearing. Did not what? They did not call for briefs. They did not hold a hearing. Okay. The Southern District has the . . . for the writs, we have the forms that are filled out and you cite the reasons. And before they got to that point, they dismissed for lack of exhaustion, lack of state exhaustion, which I think is an error. But I think even arguendo, the lack of objection, I think then you would look to plain error, I think, in this case. I think that it was error to allow the witness to stand on the field after they had already voluntarily testified to facts. And I think that when that happens, the fourth prong of the plain error is that this court has the remedy, this court has the discretion to remedy the situation. And I think that . . . I think that it's not a dispute that is going to be put into jeopardy a second time. I think that the main dispute is if consent allows it. And I think we're, in essence, asking for guidance from the Fifth Circuit on this in that I think plain error should be something that is looked at when it comes to the issue of consent. And I think if . . . I think if consent . . . I think plain error shows that the mistrial should not have been granted. I think plain error shows . . . I think it was an abuse of discretion. And I think plain error shows that the witness should not have been allowed to plead the Fifth. And so a retrial is basically giving the state a second chance to clean up their case. They're giving a second chance to present a more polished case in front of the jury, which, when you look at the rights of double jeopardy, one of those is to have the right of a particular tribunal to decide a case. And, you know, those rights are going to be violated with a retrial of this case. Was there objection made to the granting of the mistrial? Is there an on-the-record objection made by your client objecting to the granting of the mistrial by the trial judge? No, Your Honor. Would you have not waived that? Again, I don't think . . . I think that goes to plain error. I think plain error shows that if there's a substantial right being affected, that notice to the court isn't something that needs to be . . . that needs to be shown. I think . . . I think if the lack of an explicit objection is the hang-up, I think that can still be overcome by plain error. It's a hang-up. Right. So you say that you would . . . We don't talk legal at all. You know, it would be . . . you believe it would be clearly abuse of discretion if you had made an objection, or the lawyer who was there. But since they didn't, then we analyze it under plain error, just like we analyze all these other unobjected-to things for plain error. Yes, Your Honor. Okay. And so I think when looking at it through the lens of plain error, I think . . . I think the witness wants . . . I mean, it's well settled. Once they voluntarily testify to facts, they cannot stand . . . You can't pick and choose on the Fifth Amendment once you've come forward, and that's . . . Absolutely. And so I think . . . I think the fact that it was coming out . . . and again, this was coming out on day three. In other words, the question is whether your lack of objection indicated consent. Isn't that the question? I believe . . . I believe that's the question. That's the basis of consent. Yes, Your Honor. And I think . . . I think that . . . And if your objection had been futile, that's one argument I mean you make. Right. And I think if there had been an objection and we were standing here in the same place . . . Shouldn't the trial judge have been given an . . . Assuming he was wrong, shouldn't he have been given an opportunity to correct it by someone pointing out, by making his error, by making an objection? Yes. I think in a . . . Again, I think an objection would . . . an explicit objection would have helped . . . would have helped the record and helped us arrive to a better place today. It may have even allowed your client to get a jury verdict one way or the other in the case. Perhaps. I think . . . I think . . . But it seems like he . . . It seems like the judge's decision when reading the record and when cited by the First Court of Appeals of Texas, which did have the record to examine, said that, you know, the objection . . . There was no consent and they didn't even address, you know, the underlying error of the granted of the mistrial. Because under Texas law, just because somebody pleads the Fifth, you can require them to do it right there in open court in front of the jury. There's no rule that says that somebody's pleading the Fifth that you get a mistrial or that it doesn't have to be done in front of the . . . There's some jurisdictions that say it has to be done not in front of the court, but it's right out there in front of everybody under Texas law. Right. So, what would be the basis for the mistrial? The basis for the mistrial, I think if you read the judge's understanding, the judge's rationale, which is cited . . . The excerpt is in the First Court of Appeals opinion. The judge says, you're going to be denied a cross. So, that seemed to be his reason was that Montana was being denied the ability to cross. Well, it's not really a denied a cross. It's a pretty darn good cross, isn't it? If you can have the person, every time you ask them a question, say, I'm asserting my Fifth Amendment right, and then they can't really do anything. I mean, that's a positive thing for a criminal defendant, isn't it? Yes, it is. I agree, and especially after, in light of the fact that he's already testified to certain facts which are eliciting this response. So, I think the fact that he was going to have to say that and then turn around and say, well, I plead the Fifth now. Well, what a retrial is going to do is going to be, this is going to be prepared differently. This testimony is going to be polished. It's going to give the state an opportunity to perfect their case and have a second bite at the apple. Has that person fled out, the other person? This would all be off the record, but from my understanding, the person is not charged. The person will be granted immunity, and the person will testify again.  That would be for the state to answer. Okay. Because that would tell you right there whether or not you'd be prejudiced in your retrial. Exactly. And that's, and again, I don't want to speak outside of the record, but that's from my understanding. The state, of course, could go to that. I don't even know if there's been a decision made to that, but the trial was, this trial was in September of 2013. Okay. Well, I think they're going to answer that question. We've got a red light. Let's see if we can get some information out of the state here. Good morning. May it please the Court. Megan Scott on behalf of the appellee, the state of Texas. I believe that the real issue that should be before this court today is whether or not federal intervention in the state adjudicatory process is really proper. Let's get to that, but first of all, what's the status of the witness in the new trial? If there was one. And as counsel pointed out, this is off record, but I've spoken to the prosecutor who currently is handling this case. Mr. Faraz has now been granted immunity. I believe that the issue at the time was the acts that Mr. Faraz admitted to on the stand were unknown to the state until that very moment. Well, that's a different trial. That gives you, the state, a much better advantage at the new trial, doesn't it? It does, but I believe it also gives an advantage to the petitioner, because here we have a case where everybody knows exactly what he's going to testify about. It's an issue of credibility for the witness that the state was not made aware of, and nor was defense prior to the original trial. Did you maintain that it was proper for the district court to have granted a mistrial, just sui sponte like that? I do. On what basis? On the basis that it seems to have been defense counsel at trial who, as I pointed out in my brief, really raised the issue of not being able to do a proper cross. What we do know from what is cited in the appellate court decision from the state appellate court is that there were protracted discussions that were had in chambers between state's counsel and defense counsel about this issue. If defense counsel wanted to object to the mistrial, he had ample opportunity to do so both off the record and on the record, and failed to do so. We don't know whether he did it off the record, because by definition it's off the record. Correct. All of this was off the record. It is. Another fact's off the record, which goes to point out that if we are going to decide the double jeopardy issue, I think that remand to the district court to actually get a proper record developed on the issue would be important. I think that it's also important to point out that the mistrial was declared in September of 2013, and defense counsel didn't file his writ objecting on the double jeopardy grounds until November of that year. Here, as you pointed out, the trial court did not have an opportunity to address those objections until well after the mistrial had already been granted and there was no way back. But you're not saying it's untimely. It's timely because then you're announcing that you might retry him. It was actually set back on the docket. The mistrial was September 11th. It was set back on the trial docket on September 30th, and the writ was not filed until November 11th. So we're looking at well after notice had been granted that there would be a second trial, and I think that was even discussed as the mistrial was being declared in the trial court. But I think here what the real issue— Do you have a transcript of what actually happened in the trial? No, sir. Not on the record before you. The only excerpts that we have from the trial transcript are what the first court of appeals cited in their opinion denying the double jeopardy writ. So we don't have the trial transcript in full for you. So what we have before us is the issue of consent. If he did not consent to the mistrial, then the issue of double jeopardy is clearly before us. I disagree. The state's opinion is that federal intervention at this point in the state adjudicatory process is not proper at all under the case law that the Supreme Court set out in Braden v. 30th Judicial Circuit. And this court's case law in Dickerson v. Louisiana and Brown v. Estelle. Okay. What do you do with Fein? In Fein, Your Honor— Which you used your ethical duties to cite this terrible case for you. It is a terrible case for you, isn't it? I think in some ways, but there's several distinguishing points that I think would be instructed to this court. First, the defendant in that case had been adjudicated as a juvenile. In this situation, we have never actually—the defendant has never been convicted or acquitted of this crime. So I think what we're really looking at, especially in light of the state decisions on the double jeopardy issue, is that this isn't double jeopardy, but it's continuing jeopardy. I think it's also important to note that Fein was decided in 1973, which was the same— What do you mean? Can you stop a little bit? I'm continuing jeopardy. The case in Fein held that a federal court could adjudicate a double jeopardy claim before trial because the double jeopardy clause protects against double prosecution, and that right would be meaningless if the defendant had to wait until after trial to assert double jeopardy. So why does that not apply, and what's this continuing jeopardy point you're making? I think here, appellant has had the opportunity to have his double jeopardy claim reviewed. We're not looking at a situation where there was no review of his double jeopardy claim. Where? I'm sorry? Where did he have it reviewed? In the state courts. So he did file his writ of habeas corpus in the district court. He went up to the first court of appeals in the state of Texas, and then the petition for discretionary review was denied by the court of criminal appeals. Okay, well then why wouldn't that be sufficiently exhausted so that we could then determine it as a matter of constitutional law? Because I think it's important to note that decisions that came after Fein have really shifted the analysis on that. So Fein was decided in 1973, which is the same year that Brayden was decided. And Judge Clark, in his dissent on Fein, pointed out that the court's decision in Fein cuts across the express caveat of the Supreme Court in Brayden. And then what follows is Brown v. Estelle in 19— That's a dissent in that case. It is. So we have to say Fein is good law. Yes, Your Honor. But I think what follows is Brown v. Estelle and Dickerson v. Louisiana. Okay, tell me the principle. Tell me exactly why those apply to support you. Your Honor, in Dickerson v. Louisiana, the petitioner made the exact same argument that appellant is making in this case. It was a speedy trial violation rather than a double jeopardy violation. But Dickerson argued that the unconstitutional trial would constitute a special circumstance that would allow him to have federal court review pre-trial of his claim. And this court in Dickerson denied that. So we're looking at a situation— What did we say? I'm sorry? What did we say when we denied? In Dickerson, this court said that pre-trial federal intervention in a state adjudicatory process should not be allowed absent special circumstances. And so what we need to ask here is are there special circumstances under the facts of this case that would permit pre-trial federal intervention? And the answer is no. When we look at some examples of special circumstances that have been cited, we're looking at cases where the state has had the opportunity to litigate an issue but has declined to do so. All right. Now, wouldn't that really be more appropriate for the district court to decide? I mean, as you earlier suggested. I mean, in other words, if we say there is a constitutional issue involved in here of double jeopardy and the state statutes don't save these facts from the protection of the double jeopardy clause of the Constitution, and then the question is whether the federal court should exercise their discretion, that would be the issue that you would present and you would cite the Dickerson case, right? I did, Your Honor, and that was how Judge Rosenthal decided in the district court. The state in this case filed a motion to dismiss on the failure to exhaust state remedies. Okay. But also at the same time, I mean, she may have been in error, and frankly it does seem to me she was in error, to say that the double jeopardy clause of the federal Constitution was saved by these Texas statutes, which I don't think is correct. Well, I think that the point of law that should be the focus is under 2241 Ritz. There has to make a distinction between, and this is what the Supreme Court does in Braid, it makes a distinction between petitioners who are using federal court to force a state proceeding to move forward and petitioners who are using a federal court to derail a state proceeding, and the Supreme Court draws a clear distinction in Braid that the former should be permitted and the latter should not, and what the appellant's asking this court to do falls firmly into that latter court category. He's asking this court to intervene to stay a legitimate state court proceeding so that he can litigate a constitutional right pretrial. And in Braiden, this court specifically said, or the Supreme Court, excuse me, that federal habeas corpus should not be a pretrial forum for state prisoners, and that is what appellant is attempting to use this court for. And in Brown v. Estelle, this court adopted the reasoning of the Supreme Court, so Brown came a few years after Braiden, eventually followed by Dickerson, and in Brown, this court stated the distinction between cases where federal relief is proper and cases where it is not turns upon the type of relief sought, and an attempt to dismiss an indictment or prevent a prosecution is an objective normally not attainable in federal court through the habeas corpus proceedings, and an attempt to force the state to go forward to trial would be cognizable. It's normally not available, but we've carved out this area in the Fain case. Did you cite Fain to Judge Rosenthal? I'm not sure whether I did or not, Your Honor. Because she would have covered that because she's very thorough, and I don't believe she did, did she? She did not address Fain in her opinion, no. But I think that the decisions in Brown and Dickerson are much more instructive on the issue. Well, they're not even dealing with the double jeopardy like Fain is. Correct. But it does allow for only special circumstances should permit federal intervention. So unless this court is adopting the rule that double jeopardy in and of itself will always be a special exception, then we really should stick with the distinction that was drawn by the Supreme Court in Braden. But shouldn't she at least have the opportunity to consider whether it's a special exception here when she doesn't appear to have done so? She doesn't, Your Honor, and it's important to note that the appellant has never raised that issue to her either. The appellant has proceeded only on the merits of the double jeopardy claim, and it's the state who's raising the issue of failure to exhaust state remedies. And unless one of the special exceptions that have been laid out by this court or the Supreme Court applies, it's the appellee's position that federal intervention at this point isn't proper. Did you make that argument below? I did, Your Honor. That Braden specifically prohibited the district court from acting? Yes, Your Honor, I did. And she found that it was not necessary to reach that issue because she found that the state statutes provided adequate where it said that those remedies had not been exhausted, I believe she said. Yes, she found that the remedies hadn't been exhausted. But there was an adequate remedy. I guess she found there was an adequate remedy that would protect his double jeopardy rights. Correct. But he had not exhausted those. Correct. And that's the special plea that's found in Chapter 27 of the Code of Criminal Procedure in Texas. It would permit the appellant to. . . But generally that doesn't address the double jeopardy clause because it permits further prosecution. It doesn't prevent prosecution but only sentencing. Correct. It doesn't prevent the second trial from moving forward, but what it does provide the appellant is an opportunity for the first time to develop the facts surrounding the double jeopardy claim on the record in the trial court simultaneously with the facts of the actual underlying criminal charge. And then it would allow the jury to be the determiner of that mixed question of law and fact and whether the facts that have been developed during the trial would infringe upon his double jeopardy rights. But he's already had them infringed. I'm sorry? By that time he's already had them infringed. Correct. But it would prevent a conviction on the double jeopardy. That's just part of the right under double jeopardy, as you must acknowledge. Here we don't have a situation like that's found in Abney where there was no appellate court review. Through the 14th Amendment the states are tasked. . . That doesn't save the double jeopardy clause as it's been explained in the cases, which prevents the state from prosecuting the individual, not just from conviction and sentencing. Correct. But I think in Thane it's important to note that the issue of exhaustion, and in the other cases, Robinson v. Wade, for example, the issue of exhaustion wasn't briefed. The issue of exhaustion was often waived by the state. So here you have before you an opportunity where the state for the first time in one of these double jeopardy. . . Yeah, but the remedy offered by the state that has not been exhausted is not a remedy that addresses his double jeopardy constitutional rights. Correct, not in federal court, but he has had his constitutional rights. Federal law in the United States Constitution applies to state courts as well, you know. Exactly, and this is not a situation where the state has been derelict in its duty in protecting the appellant's rights. Here the state has affirmatively looked at the double jeopardy issue. It has had an opportunity to have. . . They looked at it, but what does that mean? There was a pretrial writ that was filed in the district court, and there were hearings that happened at that level. Then he went to the first court of appeals, and they were thoroughly briefed, and then the court of criminal appeals reviewed it and denied the petition for discretionary. . . To me, I mean I'm just speaking one judge, but to me the sole question is whether he consented. And if he consented to it, he goes back to trial. But if he didn't consent to it, then he can't be tried again. It's just that simple. And should this court find that federal review at this point in the adjudicatory process is proper, then the state still contends that double jeopardy doesn't apply here. This is not a violation of his double jeopardy rights. The issue is did he consent to the mistrial, and the answer is yes, he did. He had an opportunity. . . Even though it doesn't say it on the record. You don't have. . . Who bears the burden on that? Don't you bear the burden to show he did consent, not him to show he didn't consent, because it would ordinarily be inappropriate? So you're bearing the burden? I believe that even if we are bearing the burden, that we're looking at an issue of implied consent here. We're not talking about a situation where, you know, after Mr. Faraz made his comments on the stand, that the trial court judge immediately stood up and said, I'm declaring a mistrial, and nobody speak. But we don't have a record of that, right? Well, we do have what was developed during the federal habeas proceeding that was in the district trial court. Is that before us? It's discussed in the first court of appeals opinion, and that is all that you have before you to tell us what happened. But you don't have the record of the actual proceeding. Exactly, which is why the state would argue that if this court decides that federal intervention is proper, then really the remedy should be remanded back to the district court to allow us to fully develop the record on the double jeopardy issue. All you have before you is the state first court of appeals opinion, and it does provide a summary of the facts that happened at the trial court, and it provides an excerpt, but it's probably not. It's clearly the best thing. I mean, just to let the district court sort this thing out, so I'll go back and start over and see if you can build your record that's adequate to support your claims, or he can build his record to adequately support his claims, and then let the district court make a decision based on some kind of record that indicates what the dickens went on. Correct, but the state's contention would be. Which is up here. I mean, the blind leading the ignorant. At this point, though, it's the state's opinion that federal intervention isn't proper, that the real remedy here should be complete dismissal from federal court and allow the state process to move forward, allow us to actually try this defendant to conclusion and receive either a conviction or acquittal for the first time, and after that's determined, if the defendant is convicted, and this would be after he's allowed to have the special plea on the double jeopardy issue presented at the trial court, allowed to have the jury make a determination independent of what the trial court judge determination was on the issue of double jeopardy, and then he can have the conviction reviewed, and that's exactly what this court did in Dickerson and Brown. In Dickerson and Brown, both times this court said that a potentially unconstitutional trial is not enough to warrant federal intervention. We've said in the context of double jeopardy specifically that actually going to the trial itself violates your double jeopardy, and it's good law in the Fifth Circuit, and Judge Rosenthal wasn't even presented with that, and so she held that your special plea and all that was good enough, but that's because she didn't know that we had held that even going to the trial was further violation of the double jeopardy, and so this is not analogous. I think we have your point, but I don't see how you overcome the binding Fifth Circuit precedent. I think the issue with Fein is that the question of whether or not exhaustion required a trial in the state court wasn't fully briefed or developed, and here we have the opportunity to really delve into whether or not the prevention of a legitimate state court proceeding is warranted under a 2241 writ versus reviewing that conviction in federal court after in a 2254 writ. Well, even if the record wasn't clear all the way in the Fein case, the court answered the question, and we are bound by our prior precedent. The court did answer the question, and I think that what we need to look out here is is there a special circumstance that requires that intervention on every double jeopardy claim, and those special circumstances have been bad faith prosecution on the part of the state, harassment or threats like we see in Dombrowski or a refusal of the state to take up the issue like we see in West v. State of L.A., and because none of those special circumstances are seen here, this is not bad faith prosecution on the part of the state. This is not a situation where the state goaded the defense into asking for a mistrial. This is a situation where something happened in the trial court. There was a mistrial declared. The defense did not object on record.  Well, Your Honor, I think that's another issue, but the point is that it would have been up for the defense at that point. Do we know that the defendant did not object? How do we know that? From the review of the first court of appeals did review the trial court record. The trial transcript was in their record. There is a transcript somewhere. There is a transcript somewhere. They reviewed it, and they cited quotes from it, and they stated that there was nothing on the record where the defense ever objected to the mistrial, although there was some discussion on the record. Where is the attorney who tried this case? Where was the attorney for the defendant in the initial proceedings? I'm not aware of who represented him at the trial court. Okay. Thank you, ma'am. We appreciate your argument. Mr. Caldren, you have some rebuttal time if you think you need it. May it please the court. In response to the question positive to the state, from my understanding, the trial judge permitted the witness and his newly appointed counsel to use his chambers. So they were discussing out there. And so trial counsels remained in the court and the judge was on the bench. Everything you're telling us is hearsay, right? I'm sorry, Your Honor? It's based on hearsay. Yes, Your Honor. Yes. But, you know, you're asking the question. But I think the state talks about the federal interest. I mean, I guess everything's been said. It's hearsay, so go ahead. Yes, Your Honor. But this court has decided several cases throughout the years. I know I didn't have a proper recitation of Fang, but I know in 2011 this court decided Martinez v. Caldwell, which was a pretrial writ of habeas corpus on a state prosecution where it was decided pretrial. I mean, I think through decades of precedent, it is proper for this court, as the court has said in many cases, to decide Ritt's pretrial because it is the double jeopardy in and of itself is the precious right. And, you know, I think Abney came after Fang. Abney was a Supreme Court case in 77 which said that the entire purpose of the double jeopardy clause in preventing a second trial is so that you don't have to run the gauntlet again. I mean, that's the entire purpose. That's why it's in the Bill of Rights. That's why it's a right afforded to us because this is something that's important. I know the district court, you know, I did argue, I did request that this court grant the right, but I did say in the alternative that it should be remanded because the district court did not address any of the issues. The district court, if you look through the court's record, was apprised of the reasons for it. They were apprised of the reasons for the request for the right, but the state filed a motion to dismiss citing state lack of exhaustion. There was a reply. The reply was limited to what the state said, which was, you know, addressing the state exhaustion, which it was. It went to the first court of appeals, went to the court of criminal appeals. All state remedies were exhausted. Were you involved in the state proceedings, the state post-trial proceedings? Yes, sir. So the state is basically saying that in order for this issue to be addressed properly in the appellate court, that a Montano has to go to trial again and get convicted, and then he can appeal and argue double jeopardy. Or else he can win in this special plea to the jury. Right, he could. But, again, that's one of the things that I think the courts have said that the reason that it's brought properly under 2241 is because he shouldn't have to do that. He shouldn't have to be. If, in fact, it is found that the trial violates double jeopardy, he shouldn't have to go to trial and be subjected to jeopardy to prove that. I mean, I think if it's found that this is in violation of double jeopardy, then it should be granted. And I don't think there is any argument that he is being put in jeopardy again. And I think, as Judge Jolly said, I mean, it appears that consent is an issue. It appears that most courts have decided that you consent or you don't, and that's it. But that's why at submit we're also looking for guidance in this issue because if the underlying basis for the mistrial isn't within sound discretion, then I think plain error applies. I think plain error gives the courts the discretion to remedy the situation. And I think if everybody is in agreement, which the state wouldn't agree, but there should not have been a mistrial declared in this case, I think. And I think a rehashing of the record and questioning the judges, the prosecutors, the defense attorneys, I think it's all going to lead to what's already in the record, which is that the witness testified voluntarily to incriminating facts. The judge let him blanketedly plead the Fifth, didn't make him take the stand and plead the Fifth to specific questions, let him blanketedly plead the Fifth and not continue testifying, and upon that basis declared a mistrial. So I think it's plain error upon plain error, which I think that should be addressed as well with regards to the consent issue. Okay. We have completed the argument. Thank you very much.